IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| STEVEN J. PROPST and MARLENE R. PROPST, | ) ) ) | |
| Plaintiffs, | ) ) | TC-MD 240002R |
| v. | ) ) ) | |
| DEPARTMENT OF REVENUE, State of Oregon, | ) ) ) | |
| Defendant. | ) | **DECISION** |

Plaintiffs appealed Defendant's Conference Decision Letter and Notice of Assessment, dated October 5, 2023, for the 2019 tax year. Plaintiffs challenge Defendant's disallowance of expense deductions on the basis that their snow removal activity was a hobby and not a business. Plaintiffs also challenge Defendant's determination that they failed to sufficiently substantiate business expenses.[1]

The court finds that Plaintiffs have met their burden of proof that their snow removal activity was a business engaged in for profit. However, the court finds that Plaintiffs have not substantiated additional business expenses beyond the amounts stipulated by the parties. (Ptfs' Ex 11.)

/ / /

/ / /

/ / /

/ / /

---

[1] Defendant's bank deposit analysis found additional unreported income that Plaintiffs did not challenge at trial.

Trial was held on June 25, 2024, in the courtroom of the Oregon Tax Court. Connor J. Moran, of the law firm Kell, Alterman & Runstein, L.L.P., appeared on behalf of Plaintiffs. Steven J. Propst and Marlene R. Propst testified on their own behalf. Dana Miller, auditor, appeared on behalf of Defendant but did not testify. Plaintiffs' Exhibits 1 to 18 were received into evidence.

## I. STATEMENT OF FACTS

A.    *Business Operations*

Plaintiff Steven Propst ("Steven")[2] testified that he worked as a crane operator for over 40 years, gaining extensive experience operating and maintaining heavy equipment. Upon retirement, he purchased a snow removal business from a retiring operator. He purchased additionally necessary equipment in anticipation of increasing business. He inherited a customer base of approximately 40 driveways, which increased by the time of trial to 135 driveways.

During the snow season, Steven's workday typically began at 6:00 a.m. and ended around 2:30 a.m., with occasional emergency callouts to assist in clearing roadways after auto accidents. His snow removal business employed a range of equipment, including snow blowers, pickup trucks, forklifts, scissor lifts, excavators, dump trucks, and various plows, including plows that can be attached to his smaller trucks. Due to varying job demands and hidden road hazards, extensive equipment maintenance and multiple vehicles were required. Steven estimated his equipment's value at $650,000 to $700,000, noting an increase in value after the COVID-19 pandemic.

/ / /

---

[2] The court's usual practice is to use a party's last name; however, since Plaintiffs have the same last name, they will be identified using their first names.

The business generated annual gross receipts between $50,000 and $80,000, relying solely on word-of-mouth referrals. Recently, Steven received an offer to sell the business, along with one snow blower, for $450,000. While he enjoys the work, he stated that, now in his seventies, he finds the cold weather less tolerable.

B.    *Business Administration*

Marlene Propst ("Marlene") testified that she holds a bachelor's degree in business administration and a master's degree in counseling. She worked at Linn-Belton Community College for 35 years in various positions, retiring in 2011 as Director of College Advancement. Following Steven's illness in 2013 and his decision to start the snow removal business in 2016, she managed the business's billing and expenses.

Initially, the business lacked a separate bank account due to what Marlene described as "bad" accounting advice. As the business grew, she opened a dedicated business account and credit card in 2022, prior to the audit. Plaintiffs did not prepare a formal written business plan, though Marlene testified that she was capable of doing so.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

C.      *Business Expenses*

1.      *Stipulated business expenses*

Prior to the start of trial, the parties stipulated to the substantiation of the following

business expenses:[3]

| Item | Per return | Per agreement |
|---|---|---|
| Depreciation | $43,783 | $43,783 |
| Insurance | $1,542 | $1,347 |
| Office | $96 | $96 |
| Repairs | $35,005 | $32,922 |
| Supplies | $7,566 | $3,566 |
| Fuel | $12,596 | $5,384 |
| LLC | $100 | $100 |
| Phone | $2,098 | - 0 – |
| Trip permits | $660 | $548 |
| Uniforms | $500 | - 0 – |
| Tax Prep | $65 | $65 |
| Labor | $775 | - 0 – |
| Business use of home | $461 | $461 |

2.      *Telephone and Internet Expenses*

Plaintiffs maintained multiple telephones lines, including landlines and cell phones.

(Ptfs' Ex 12.)  Plaintiffs presented a handwritten list of expenses labeled Verizon for cell

phone(s) and Century Link for internet service with a total of $2,445.48.  (Ptfs' Ex 12.)

Plaintiffs also presented 2019 credit card statements identifying a number of phone and cable

providers.  (Ptfs' Ex 13.)  Due to inconsistent service in mountainous areas, Steven sometimes

carried two cell phones.  Marlene was unsure whether Verizon charges covered one or two

phones.  Plaintiffs submitted credit card statements confirming payments but did not retain

detailed billing statements.

---

[3] See Ptfs' Ex 11.  These substantiated amounts were contingent on the Court's finding that Plaintiffs operated a business under IRC section 162 rather than an activity not engaged in for profit under IRC section 183.

3.  *Fuel and Repair Expenses*

Plaintiffs submitted a detailed fuel expense report totaling $12,308.67, supported by some receipts and credit card statements. (Ptfs' Ex 14 at 4.) However, the actual receipts amounted to $5,384 which equals the stipulated amount. (*Id*.) Steven testified that certain fuel purchases, including untaxed "red diesel," were exclusively for snow removal equipment. He also stated that fuel purchased for personal travel was paid in cash.

4.  *Maintenance and Repairs*

Plaintiffs presented additional expenses of $738.52, described as "unintentionally omitted." These receipts appear to document vehicle maintenance, but they lacked clarity as to whether the expenses were already included in stipulated amounts.

5.  *Depreciation and Business Growth*

Depreciation of equipment was the primary factor in Plaintiffs' prior business losses. The conference decision reports that during the period 2016 to 2022 Plaintiff total business receipts were $566,002 and their reported net losses were $284,348. (Def's Ex DE-67, 68.) During that period their depreciation for equipment constituted $437,535 of their expenses. In 2019, Plaintiffs reported gross receipts of $63,435 and a net loss of $41,351. (Def's Ex DE-7.) The largest expense was depreciation for equipment as $41,812. *Id*. Plaintiffs continuously reinvested in equipment while annual gross receipts increased. In 2021, gross revenue was $123,000, rising to $184,000 in 2022 and $171,000 in 2023. Net income in 2023, after expenses, was approximately $40,000. Marlene testified that absent significant equipment purchases, net income in 2022 would have been substantially higher. Marlene reviewed the valuation of the equipment and determined that it not only retained its value but appreciated over time.

/ / /

The central issue in this case is whether Plaintiffs' snow removal business qualifies as a trade or business under Internal Revenue Code (IRC) section 162, allowing deductions, or whether it is an activity not engaged in for profit, subject to the hobby loss rules under IRC section 183. The secondary issue is whether Plaintiffs have substantiated business expenses in excess of the amounts stipulated by the parties.

The adjudication of Oregon income tax cases relies on several core principles of the state's income tax framework. First, Oregon's personal income tax law is intended to be identical in effect to the federal Internal Revenue Code (IRC) for determining individuals' taxable income. ORS 316.007.[4] Second, in cases before the Tax Court, the party seeking affirmative relief bears the burden of proof and must establish their case by a "preponderance of the evidence." ORS 305.427. Third, allowable deductions from taxable income are a "matter of legislative grace" and the burden of substantiation is placed on the individual claiming the deduction. *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992). The court begins its analysis by determining whether Plaintiffs' snow plowing service was a business or a hobby.

A.      *IRC Section 183 – Hobby loss*

Under IRC section 162(a), deductions are allowed for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business[.]" IRC section 183 prohibits deductions for activities not engaged in for profit, except as provided under that section. Deductions are generally not allowable for activities that are carried on primarily as a sport, hobby, or for recreation.

---

[4] References to the Oregon Revised Statutes (ORS) are to the 2017 edition.

Whether an activity is engaged in for profit is based on objective standards, considering all facts and circumstances. Although a reasonable expectation of profit is not required, the facts must indicate that the taxpayer entered into or continued the activity with the objective of making a profit. Treas. Reg. § 1.183–2(a); *see Comm'r v. Groetzinger*, 480 US 23, 35, 107 S Ct 980, 94 L Ed 2d 25 (1987). The IRS provides a non-exhaustive list of factors to be considered, including: (1) the manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort the taxpayer expends; (4) the expectation that the assets may appreciate in value; (5) the taxpayer's success in carrying on similar or dissimilar activities; (6) the history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation. *Id*.

In the court's experience, IRC section 183 cases typically fall into two categories. The first involves activities typically regarded as hobbies or recreation, such as horse boarding or collecting baseball cards, which have some business-like features but are primarily pursued for personal enjoyment. *See*, *Prieto v Comm'r*, 82 TCM (CCH) 716 (2001), 2001 WL 1196201 (observing that despite hiring professionals and investing significant resources for their horse boarding activity, taxpayer's substantial losses over multiple years, inadequate business planning, incomplete records, and personal pleasure derived from the activity demonstrated a lack of profit motive); *Akey v Comm'r*, 110 TCM (CCH) 491 (2015), 2015 WL 7567723 (finding the taxpayer did not have sufficient expertise in baseball card collection to demonstrate profit motive.)

The second category involves pure tax shelters, which are structured to reduce tax burdens without a genuine intent to make a profit. *See*, *Gregg v Dept. of Rev*., TC-MD 160068R,

2017 WL 5900999, (Or Tax M Div, Nov 30, 2017) (finding an investment in third-party solar lenses was a pure tax shelter with little economic substance). This case does not fit into either category.

Plaintiffs provided persuasive testimony that Steven operated his snowplowing business professionally, working long hours and in harsh winter conditions. Steven had been a successful equipment operator for over 40 years, a profession with heavy maintenance work needed similar to snow removal activities. Plaintiffs demonstrated that the machinery used in the snowplow business was expected to increase in value with proper maintenance. The evidence confirms that Steven invested significant time and money in maintaining his equipment. Additionally, Plaintiffs recounted receiving an offer to purchase the business and one snow blower for $450,000, supporting their expectation of increased value.

Although Plaintiffs incurred many years of net business losses, they credibly explained that these losses resulted from reinvesting revenue into equipment. In later years, reinvestment declined, and net profits increased. While Steven acknowledged that he enjoyed the work, this is not disqualifying; many people enjoy their jobs. Ultimately, the court is persuaded that Plaintiffs engaged in the snow removal business with a genuine intent to make a profit. Therefore, the court allows the expenses stipulated by the parties and must now consider the disputed expenses.

B.    *Business Expenses*

1.    *Phone expenses*

Deducting cell phone and home phone expenses for business purposes can be challenging. Cell phones are *not* subject to the strict substantiation requirements of IRC section 247(d). However, the IRS requires that deductible expenses be both "ordinary and necessary" in the course of business. Because phones are commonly used for both personal and business

purposes, taxpayers must demonstrate the proportion of use attributable to business activity. Failure to do so may preclude deductibility, as items that serve both personal and business purposes are presumed to be personal expenses. *Curtis v Dept. of Rev*., TC-MD 210413N, 2022 WL 4481730 at *5, 6 (Or Tax M Div, Sept 27, 2022)

Plaintiffs provided payment records but failed to produce itemized phone bills demonstrating business-related versus personal usage. Therefore, the court disallows the deduction for phone expenses.

### 2. *Fuel expenses*

Fuel expenses in this case fall into two categories. The first involves the use of a use of a personal vehicle, such as a pickup truck, for business purposes. Those expenses are subject to strict evidentiary standards under IRC section 274(d). Steven did not keep a mileage log for this type of travel. Thus, Plaintiffs are not entitled to travel expenses related to their pickup trucks. The second category includes fuel expenses for heavy machinery and equipment, such as snow blowers and dump trucks, which are not subject to IRC section 274(d). While Plaintiffs presented a number of receipts for the type of fuel used by heavy machinery, their totals do not exceed the amounts stipulated by the parties. Further, Plaintiffs did not clarify whether these fuel expenses were not already captured by the stipulated amounts. Thus, the court declines to make further adjustments to deductions for fuel expenses.

### 3. *Maintenance and repairs*

Although Plaintiffs' records indicate legitimate business expenses, incomplete documentation prevents the court from verifying whether they exceed the stipulated amounts; therefore, additional deductions are denied.

/ / /

### III. CONCLUSION

After careful consideration, the court finds that Plaintiffs operated their snow removal business with a profit motive and allows the stipulated business deductions. However, Plaintiffs have not substantiated additional deductions beyond the agreed-upon amounts. Accordingly, the court denies further adjustments. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is granted in part. Defendant's determination that Plaintiffs' snow removal activity in 2019 was a hobby is reversed. Plaintiffs are entitled to business deductions in the amounts stipulated by the parties, as set forth in the paragraph titled "Stipulated Business Expenses."

IT IS FURTHER DECIDED THAT Plaintiffs request for business deductions in excess of the stipulated amounts is denied.

RICHARD D. DAVIS
MAGISTRATE

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed. TCR-MD 19 B.*

*This document was signed by Magistrate Richard D. Davis and entered on March 25, 2025.*